1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7     UNITED STATES OF AMERICA,                    Case No. 23-cv-00336-WHO

8                     Plaintiffs,

9              v.                                  **ORDER GRANTING MOTION TO**
                                                   **DISMISS THE SECOND AMENDED**
10    KAREN BAXTER, et al.,                        **COMPLAINT**

                      Defendants.                  Re: Dkt. No. 56
11

12         Plaintiff Relator LLC ("Relator") is a limited liability company whose members are small

13   business owners and taxpayers, formed with the express purpose of identifying corporations who

14   have needlessly and illegally profited from government guaranteed loans that were available as a

15   result of the COVID-19 pandemic.  It filed this lawsuit against Santa Lucia Preserve Company

16   ("SLPC"), SLPC's Chief Executive Officer and board chair Karen Baxter, SLPC's former Chief

17   Financial Officer Andrew Simer, and 10 Doe defendants (together "defendants"), alleging that

18   they violated the False Claims Act because SLPC was ineligible for loans under the Paycheck

19   Protection Program ("PPP loans") in light of its ownership or control of two private clubs.

20   Defendants move to dismiss Relator's Second Amended Complaint.  ("SAC") [Dkt. No. 55].

21   They establish, centrally, that SLPC does not own either of the private clubs and was not

22   precluded from applying for the loans in question for that reason.  Accordingly, and for the

23   additional reasons set forth below, the motion to dismiss is GRANTED.

24                                **BACKGROUND**

25   **I.        FACTUAL BACKGROUND**

26         In March of 2020, Congress signed the Coronavirus Aid, Relief, and Economic Security

27   Act ("the CARES Act") into law.  SAC ¶ 28.  As a component of the CARES Act, the Small

28   Business Administration ("SBA") acquired funding and authority to create a loan program

1    designed to support small businesses through the challenges brought on by COVID-19.  SAC

2    ¶ 28–29.  As pertinent here, this included Section 1102 of the CARES Act, which allowed the

3    SBA to guarantee certain loans under the "Paycheck Protection Program."  SAC ¶ 30.  An eligible

4    business, including a "self-employed individual, independent contractor, or sole proprietorship

5    with no employees or [an Applicant that] had employees for whom it paid salaries and payroll

6    taxes or paid independent contractors" could apply for, receive, and ultimately qualify for

7    forgiveness for, a loan. ("PPP loan")  SAC ¶¶ 32, 35 (citing SBA Application From 2484).

8        The Application Form required an applicant to make several certifications, including that

9    an applicant for a PPP loan understood the contents of the form, that an applicant was eligible to

10    receive a loan, that the PPP loan would "be used only for business-related purposes," that the

11    applicant was undergoing economic uncertainty, that the PPP loan would be used "to retain

12    workers and maintain payroll or make mortgage interest [or similar] payments," and, finally, that

13    the contents of the application were "true and accurate."  SAC ¶¶ 35–41.  Importantly, Relator

14    asserts, "private clubs and businesses which limit the number of memberships for reasons other

15    than capacity [were] ineligible to obtain" PPP loans.  SAC ¶ 46.

16        Relator alleges that SLPC "is the owner of 2,000 acres of land in Carmel, California" and

17    that it "owns, operates and manages all aspects of use of the Property it owns."  SAC ¶¶ 7, 13.

18    Part of this ownership and management of the Property, Relator asserts, includes managing "who

19    has access and the requirements for access to the Property and the various amenities it offers . . .

20    and employees paid by SLPC manage and operate all aspects of that business and the Property."

21    SAC ¶ 13.  Two establishments on the Property include the Preserve Golf Club and the Ranch

22    Club, which "restrict[] membership for reasons other than capacity."  SAC ¶ 17.  Because of

23    SLPC's decision to limit public access to its Property, and principally due to its management and

24    control of the Preserve Golf Club and the Ranch Club, Relator alleges that SLPC was ineligible to

25    apply for a PPP Loan under the CARES Act.

26        Relator contends that, contrary to the provisions of the CARES Act, SLPC "applied for

27    and received one (1) PPP Loan in excess of $2.1 million."  SAC ¶ 48.  According to Relator,

28    SLPC "knew it would continue to receive membership dues and had the power to increase those

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1   dues if necessary," so SLPC was aware that it was not undergoing economic uncertainty.  SAC ¶

2   51.  But "[d]efendants signed the loan applications, thereby endorsing" each of the certifications

3   included as a part of the application.  SAC ¶¶ 48–50.  Relator asserts that defendants "knew the

4   Loan was not necessary" and that they "intentionally made several key statements which were

5   false and intended to deceive" on their loan applications.  SAC ¶ 53.

6          As a result, SLPC received the loan, and ultimately applied for and received forgiveness

7   for the loan.  SAC ¶ 8.  SLPC's loan was forgiven in full on July 21, 2021.  SAC ¶8.

8          In sum, Relator alleges that by filling out the application, and therefore necessarily

9   responding affirmatively to each of the required certifications, SLPC acquired the PPP loan by

10  fraudulent means.  SAC ¶¶ 49–54.  The SAC asserts one cause of action against SLPC, for

11  violation of the False Claims Act.  SAC ¶¶ 60–64; 31 U.S.C. § 3729(a)(1)(A-B).  Relator seeks a

12  remedy of treble damages, civil penalties, attorney fees and costs.

13  **II.     PROCEDURAL BACKGROUND**

14         On January 23, 2023, Relator filed suit on behalf of the United States pursuant to the *qui*

15  *tam* provisions of the False Claims Act.  31 U.S.C. § 3730(b).  On May 23, 2024, Magistrate

16  Judge Sallie Kim filed an Order Regarding the United States' Notice to Decline Intervention.[1]  *See*

17  Dkt. No. 17 (noting that the "United States ha[s] declined to intervene in this action pursuant to

18  the False Claims Act").

19         Defendants moved to dismiss Relator's original complaint on September 19, 2024.  *See*

20  Dkt. No. 33.  On October 3, 2024, Relator filed a notice of its intent to file a first amended

21  complaint as a matter of course.  *See* Dkt. No. 43.  It did so shortly thereafter.  *See* Dkt. No. 44.

22  Defendants moved to dismiss; I granted the motion and permitted Relator leave to amend.  *See*

23  Dkt. No. 54.  Relator filed its SAC on January 9, 2025.  *See* Dkt. No. 55.  Defendants filed a

24  renewed motion to dismiss, Relator opposed the motion, and defendants filed a reply.  Motion to

25  Dismiss ("Mot.") [Dkt. No. 56], Opposition to the Motion to Dismiss ("Oppo.") [Dkt. No. 58];

26

27  ───────────────

28  [1] Although it is not a party to the action, the United States remains the real party in interest.  The
    *qui tam* provisions of the False Claims Act allow for Relator to maintain this action in the name of
    the United States.  31 U.S.C. § 3430(b)(1).

1   Reply in Support of the Motion to Dismiss ("Repl.") [Dkt. No. 59].  After granting plaintiff's

2   motion to continue the hearing, I held a hearing on the instant motion on May 7, 2025.  Dkt. Nos.

3   60, 61.

**LEGAL STANDARD**

4

5   **I.      Rule 12(b)(6)**

6           Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

7   if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

8   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

9   face."  See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

10  when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the

11  defendant is liable for the misconduct alleged."  See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

12  (citation omitted).  There must be "more than a sheer possibility that a defendant has acted

13  unlawfully."  *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff

14  must allege facts sufficient to "raise a right to relief above the speculative level."  See *Twombly*,

15  550 U.S. at 555, 570.

16          In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

17  Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the

18  plaintiff.  See *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court

19  is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

20  fact, or unreasonable inferences."  See *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

21  2008).

22          If the court dismisses the complaint, it "should grant leave to amend even if no request to

23  amend the pleading was made, unless it determines that the pleading could not possibly be cured

24  by the allegation of other facts."  See *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In

25  making this determination, the court should consider factors such as "the presence or absence of

26  undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous

27  amendments, undue prejudice to the opposing party and futility of the proposed amendment."  See

28  *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

*United States District Court*
*Northern District of California*

4

**II.     Rule 9(b)**

"Because they involve allegations of fraud, qui tam actions under the FCA must meet not only the requirement of Rule 8, but also the particularity requirements of Rule 9." *United States ex rel. Lee v. Corinthian Colls*., 655 F.3d 984, 992 (9th Cir. 2011).  Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard where a complaint alleges fraud or mistake.  Under FRCP 9(b), to state a claim for fraud, a party must plead with "particularity the circumstances constituting the fraud," and the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  See *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.2009) (citation omitted).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).  "In addition, the plaintiff must set forth what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citation omitted) (cleaned up).

**DISCUSSION[2]**

**I.     Public Disclosure Bar**

Defendants first argue that Relator's complaint is barred by the public disclosure bar.  Mot. 11–16.  The False Claims Act provides that there are several circumstances under which "[t]he court shall dismiss an action or claim . . . unless opposed by the Government."  31 U.S.C. § 3730(e)(4)(A).  As relevant here, I must dismiss the action:

if substantially the same allegations or transactions as alleged in the action or claim were

---

[2] Defendants request judicial notice of publicly accessible documents from websites belonging to the United States Government, SLPC, California Secretary of State, and PACER. *See* Request for Judicial Notice ("RJN") [Dkt. No. 57].  Relator has not opposed the request.  I may take judicial notice only of facts not subject to reasonable dispute if they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  As such, I take judicial notice of the existence of these websites and indisputable facts included within, but not of the truth of defendants' associated substantive arguments concerning those documents. *See Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at *1 (N.D. Cal. Sept. 1, 2010) (taking judicial notice of documents only "to the extent that [they are] not subject to reasonable dispute" (citing Fed. R. Evid. 201)).

United States District Court
Northern District of California

United States District Court
Northern District of California

publicly disclosed—

    (i)    in a Federal criminal, civil, or administrative hearing in which the Government or agent is a party;

    (ii)    in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

    (iii)    from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

*Id.* And, pursuant to the statute, an "original source" is:

an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) [sic] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

*Id.* at (e)(4)(B). To determine whether a False Claims Act claim is barred under this provision, then, I must follow a two-pronged approach. First, I must determine whether "the same allegations or transactions" alleged were "publicly disclosed" through a channel specified in the FCA statute. *Id.* at (e)(4)(A). And, if I determine that the same allegations or transactions were so publicly disclosed, I must then address whether an "original source" brought the action. *Id.* at (e)(4)(B). If I conclude that "the same allegations or transactions" were not "publicly disclosed" through any of the channels specified in the FCA, I need not address the second prong of the inquiry.

       **i.**       **Whether There has Been a Qualifying "Public Disclosure"**

In order to qualify as a "public disclosure" under the provisions of the False Claims Act, three things must be true: "(1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was public; and (3) the relator's action is based upon the allegations or transactions publicly disclosed." *Malhotra v. Steinberg*, 770 F.3d 854, 858 (9th Cir. 2014) (internal quotation marks and citations omitted). Parties dispute whether the disclosures here, publicly available information on PandemicOversight.gov, fall under the definitions of "Federal report" or "news media" categories listed under Section 3730(e)(4)(A). Even assuming,

6

United States District Court
Northern District of California

1    however, that the information on the website qualifies as either, because Relator's "action is [not]

2    based upon the allegations or transactions publicly disclosed," SLPC's argument fails on this

3    point. *Id.*

4         "Courts have interpreted 'allegation' to refer to a direct claim of fraud, and 'transaction' to

5    refer to facts from which fraud can be inferred." *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d

6    565, 571 (9th Cir. 2016) (citing *U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 235–36

7    (3d Cir. 2013) ("An allegation of fraud is an explicit accusation of wrongdoing.  A transaction

8    warranting an inference of fraud is one that is composed of a misrepresented state of facts plus the

9    actual state of facts.").  Defendants assert that because the website contains information including

10   that "Defendants' lender was Wells Fargo, the loan amount and approval date for each entity, the

11   number of jobs reported, the primary purposed of the loan, and its forgiveness status," these facts

12   arise to what is required to demonstrate public allegations or transactions of fraud sufficient to fall

13   within the scope of the public disclosure bar.  Mot. 12.  They do not.

14        Because "the publicly disclosed information does not contain an explicit accusation of

15   wrongdoing," I cannot conclude that there is an allegation of fraud present on the

16   PandemicOversite.gov website.  *Mateski*, 816 F.3d at 571.  Defendants' arguments about whether

17   the information can be described as a "transaction" fails too.  "In order to invoke the jurisdictional

18   bar, a defendant must show that the transaction . . . is one in which a set of misrepresented facts

19   has been submitted to the government."  *Id.*  Defendants do not contend that the facts available on

20   the website are misrepresented in any way.  The court in *Mateski* held that to infer fraud, the

21   "fundamental elements of fraud," namely, "a misrepresented state of facts and a true state of facts"

22   must be present.  *Silbersher v. Valeant Pharmaceuticals Int'l, Inc.*, 89 F.4th 1154, 1168 (9th Cir.

23   2024) (citing *Mateski*, 816 F.3d at 571.).  Defendants note that "the publicly disclosed facts need

24   not be identical with, but only substantially similar to, the relator's allegations."  Mot. 13 (citing

25   *Mateski*, 816 F.3d at 573).  But defendants do not grapple with the fact that the information

7

available on PandemicOversight.gov "provides no information from which the true state of facts can be inferred." *United States ex rel. Relator LLC v. iLink Empl's Co.*, No. 22-CV-01004-RGK, 2024 WL 3892980 (Klausner, J,). Indeed, "the information disseminated was so innocuous that there was no public disclosure of a transaction or allegation of fraud in the first instance, as required under the FCA." *Mark ex rel. United States v. Shamir USA, Inc.*, No. 20-56280, 2022 WL 327475 (9th Cir. Feb. 3, 2022); *but see United States ex rel. Relator, LLC v. Kootstra*, No. 22-CV-00924-TLN, 2024 WL 3666470 at *3–*5 (E.D. Cal. Aug. 6, 2024) (concluding the opposite).

Despite the uncontested fact that Relator's complaint is factually wrapped up in the information publicly available on PandemicOversight.gov, I conclude that this information alone simply does not disclose any allegation or transaction of fraud. Relator's False Claims Act claim is not barred by the public disclosure bar, and I need not determine whether Relator is an "original source" of the information at issue. Accordingly, I decline to grant defendants motion on that basis.

## II.    Failure to State a Claim

To adequately bring an action pursuant to the False Claims Act, Relator must allege: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Lungwitz*, 616 F.3d at 997 (citation omitted). Defendants assert that Relator's complaint fails to adequately allege the first two elements. Mot. 16–20. I agree. Keeping in mind the heightened pleading requirements for fraud pursuant to Fed. R. Civ. P. 9(b), *see supra*, Legal Standard Part II, I address both elements.

### i.    Failure to Allege Fraud

In my December 10, 2024, Order granting defendants second motion to dismiss, I held that "[n]o facts have been plausibly alleged to indicate that [SLPC] owns the private clubs at issue." December 10, 2024 Minute Order [Dkt. No. 54]. In its SAC, Relator now asserts that, rather than being the owner of the clubs, SLPC owns the property upon which those clubs sit, and that SLPC "both owns and manages the Property through its employees and makes decisions concerning its

United States District Court
Northern District of California

1  use and who can access its Property."  SAC ¶¶ 6–22.  Relator alleges that because "[t]he Property

2  is a closed private community, the members of which consist of very wealthy individuals who

3  fund SLPC's business through payment of dues required to stay members," SLPC (and broadly,

4  "the defendants") were ineligible for a PPP loan and so, applying for a PPP amounted to

5  fraudulent activity.  SAC ¶ 21.

6          Defendants established that SLPC does not own the clubs at issue or the land on which

7  they sit.  *See* RJN Exhs. 5–8 (Property tax and assessment information demonstrating that The

8  Preserve Gold Club and The Ranch Club are the owners of the land upon which they operate).

9  Relator argues that "Defendants make great noise about the SAC's assertion that SLPC owned the

10 land on which the Clubs operate . . . .  But Defendants miss, and rarely address, the fact that SLPC

11 also managed and operated the Clubs, irretrievably intertwining their operations from SLPC

12 itself."  Oppo. 15.  Relator misses the point.  Without clearly alleging facts that tend to show that

13 any of the defendants own the clubs that were themselves possibly precluded from applying for

14 PPP loans, Relator cannot show that any defendant in this case would be liable for fraud under the

15 FCA.  As defendants point out and further explained in the hearing on this motion, that "*some of*

16 [SLPC's] clients [are] allegedly exclusively clubs" does not create an inference that SLPC itself is

17 an exclusive club.  Relator has not named any of the clubs as a defendant in this case, nor has it

18 claimed that any club applied for a PPP loan.  Without doing so, Relator cannot properly state a

19 claim for which relief can be granted.

20          Finally, I note that the majority of Relator's SAC continues to be rife with conclusory

21 allegations.  This runs afoul of my previous Order dismissing Relator's first amended complaint

22 and Rule 9(b)'s requirements that Relator "must allege the who, what, when, where, and how of

23 the misconduct charged, including what is false or misleading about a statement, and why it is

24 false."  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (cleaned

25 up).  For example, throughout the SAC Relator makes allegations such as:

26      •  "When they applied, Defendants knew the loan was not necessary, including to support

27         their ongoing operation of the clubs and amenities available to them, whose members who

28         directly benefited from them were certainly able to support them if needed."  SAC ¶ 25.

- "Defendants intentionally made materially false statements with respect to the Eligibility Certification, Use of Proceeds Certification, Economic Necessity Certification, Worker Retention and Payroll Certification, and No False Statements Certification."  SAC ¶ 48.
- "On their loan applications, Defendants intentionally made several key statements which were false and intended to deceive."  SAC ¶ 53.
- "Defendants violated the FCA by 'knowingly' submitting and/or causing the submission of false claims for payment to lenders authorized by the SBA . . . ."  SAC ¶ 57.

Relator does not precede or follow these conclusory allegations with any *particular* facts that are sufficient to meet the requirements pursuant to Rule 9(b).  Although Relator is correct that Rule 9(b) "may be relaxed as to matters within the opposing party's knowledge . . . in cases of corporate fraud," in those cases, "the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts on which the belief is founded."  *Kayport Package Express, Inc.*, 885 F.2d at 540.  No such statement of the facts appears among the conclusory allegations pleaded in Relator's SAC.

### ii.    Failure to Allege Scienter

Although I hold that Relator has failed to allege fraud, a required element of an adequate FCA claim, I also conclude that Relator has failed to allege scienter.  To adequately plead scienter in a False Claims Act complaint, Relator must plead facts that demonstrate that defendants acted "with knowledge of the falsity and with intent to deceive."  *U.S. ex rel. Hendow v. Univ. Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006) (citing *Hagood v. Sonoma Cnty. Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996).  Unlike the "circumstances constituting fraud," intent and knowledge "may be alleged generally."  Fed. R. Civ. P. 9(b).  Generally, however, does not mean that Relator can rely on conclusory statements.  Relator, in opposition to the motion, correctly states that the False Claims Act defines an individual sufficiently liable for scienter to include when that person has (1) actual knowledge of the information; (2) acts in deliberate ignorance of the truth; or (3) acts in reckless disregard of the truth.  Oppo. 19; 31 U.S.C. § 3729(b)(1)(A).  But to adequately plead any one of the meanings of scienter, "[a] complaint therefore must set out sufficient factual matter from which a defendant's knowledge of fraud might reasonably be inferred."  *United States*

1    *ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679—680 (9th Cir. 2018).  Relator again

2    fails to allege such facts here.

3          For example, Relator contends that "Defendants violated the FCA by 'knowingly'

4    submitting . . . false claims for payment to lenders" and that "Defendants made knowingly false

5    statements and certifications in their PPP applications."  SAC ¶¶ 57–58.  These conclusory

6    statements do not demonstrate scienter.  Although it includes an informational section providing

7    background on the CARES Act and the Paycheck Protection Program, at no point does Relator

8    allege facts that tend to show that any one of the defendants had "knowledge and an intent to

9    deceive."  *U.S. ex rel. Hendow*, 461 F.3d at 1172.  As I have explained, the complaint includes

10   many examples of conclusory allegations.  These are insufficient to state a claim for scienter, as

11   Relator is required to do.

12                                              ***

13         I previously held that "[a]ny second amended complaint must contain sufficient facts to

14   state a False Claims Act claim."  December 10, 2024 Minute Order [Dkt. No. 54].  Relator has

15   again failed to meet its burden to adequately allege fraud and to sufficiently allege scienter.  I

16   therefore GRANT defendants' motion to dismiss for failure to state a claim pursuant to the FCA.

17   **III.    Individual Defendants**

18         Defendants finally argue that Relator has alleged only conclusory allegations concerning

19   Baxter and Simer's participation and engagement with any alleged fraud.  Mot. 20–21.  I agree.

20         In its complaint, Relator names Baxter as SLPC's CEO and Simer as SLPC's CFO "at all

21   relevant times herein."[3]  SAC ¶¶ 9–10.  The SAC alleges that Baxter was "chair of its board that

22   approved the subject loan application" and that because Simer was CFO, he "necessarily would

23   have been aware of the loan and directed its application."  SAC ¶¶ 9–10.  The complaint mentions

24   the individual defendants only once more—to state that:

25

26

27   [3] This is contested by defendants.  Mot. 20, n.4 ("Simer has not worked for any Santa Lucia entity
     for years and did not sign or have any involvement in any of the PPP application material on
28   which Relator's [SAC] is based.").

United States District Court
Northern District of California

1

2

3

4

5

> SLPC, the CEO, and the CFO – who were well aware of the business and legal requirements – had actual knowledge of the requirements and that SLPC did not satisfy them or acted with deliberate ignorance or reckless disregard of the truth or falsity of the claim.   This is confirmed by the fact that, as set out above, SLPC was required to certify that it knew and understood all applicable regulations, that it complied with them and was eligible under them, and that it knew that false statements could lead to civil and criminal penalties.   They either knew they were ineligible or misrepresented that they had properly researched the regulations but had not.

6

SAC ¶ 54.   At all other points throughout the complaint, Relator refers to "Defendants" generally,

without alleging any additional facts concerning the individual defendants.

7

8

Relator contends in opposition that because Baxter was "a sophisticated business operator"

9

as CEO of SLPC and that because she was "approving the loan applications, she 'had reasonable

10

grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to .

11

. . disclos[e] such facts.'" Oppo. 20 *citing Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir.

12

1984).[4]   However, Relator fails to address the next paragraph in *Burgess*, which clarifies that an

13

individual in a directing role "is not automatically liable as a controlling person.   There must be

14

some showing of actual participation in the corporation's operation or some influence before the

15

consequences of control may be imposed."  *Burgess*, 727 F.2d at 832.   There has been no such

16

showing here.   Relator has failed to allege facts that would allow me to even "draw [any]

17

reasonable inference" concerning Baxter's involvement in applying for the PPP loan, let alone

18

facts to support any level of scienter, as is required.  *See Iqbal*, 556 U.S. at 678.

19

For those reasons, I also GRANT defendants' motion concerning the individual

20

defendants.

21

**IV.     Leave to Amend**

Relator requests leave to amend—and therefore the opportunity to submit a Third

22

Amended Complaint.   Oppo. 21.   Leave to amend should not be granted when there is a "repeated

23

failure to cure deficiencies by previous amendments."  *Kayport Package Express*, 885 F.2d at 538.

24

So here.   Relator has now had three opportunities to adequately plead its FCA claim, only for its

25

amendments to be futile.   I will not allow it a fourth.   I therefore DENY Relator's request for leave

26

to amend.

27

28

---

[4] Relator does not once address defendants' arguments concerning Simer.  *See generally* Oppo.

United States District Court
Northern District of California

1

**CONCLUSION**

2     For the foregoing reasons, I GRANT defendants' motion to dismiss the Second Amended

3   Complaint WITH PREJUDICE. Judgment shall enter in accordance with this Order.

4

5     **IT IS SO ORDERED.**

6   Dated: May 8, 2025

7



8

William H. Orrick

9   United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California